# Garrett *v.* Mahaley.

### Custody of Minor Child.

(Decided April 5, 1917.    75 South. 10.)

1. Habeas Corpus; Custody of Infant; How Awarded.—In awarding custody of a minor child between opposing claimants, the dominant consideraton is always the welfare of the child, though an important but strictly subsidiary consideration is the natural right of a parent or blood relation, or even of a stranger in blood if established in loco parentis.

2. Habeas Corpus; Custody of Child; How Awarded.—A "gift" by a mother of her child to a third person, though fully executed and though not binding on the mother nor upon the child, is entitled to consideration so far as the mother's rights are concerned, especially when deliberately made to the putative father.

3. Habeas Corpus; Custody of Child; How Awarded.—In awarding custody of a minor child over seven years of age and of apparent intelligence and discretion, the expressed wishes of the child will usually be accorded great weight.

4. Habeas Corpus; Custody of Child; How Awarded.—In awarding custody of a minor child, the court will have regard for the age and sex of the child, its home surroundings, both moral and material, and especially the relative character and personality of the contesting claimants.

APPEAL from Limestone Chancery Court.

Heard before Hon. JAMES E. HORTON, JR.

Sarah Garrett petitions for the custody of her daughter Mattie by writ of habeas corpus directed to William Mahaley. The chancellor denied the petition, and petitioner appeals. Affirmed.

Petitioner is an unmarried woman 32 years of age, and has

borne four children, of whom the subject of this suit is the youngest. She lives with her father, who is fairly well to do financially, and is able and willing to help petitioner in the nurture and support of her child. Petitioner has no means of her own, but works crops on her father's farm on shares. When the child Mattie was seven years old, she went to live with respondent and his wife, and continued to live with them more than two years, visiting petitioner occasionally during that time. About Christmas, 1915, petitioner went to the home of respondent and took the child away, and in February, 1916, respondent went to the schoolhouse and took her back home with him. Petitioner says that, while she consented for the child to go and live with respondent, she did not give her to him or his wife, nor agree that she could live with them all the time. She denies that respondent is the father of the child. On the other hand, respondent says that petitioner gave the child to him and his wife, and that he is in fact her father. In this claim respondent is supported by the clear preponderance of the evidence. The child says she has been well treated by both her mother and her adopted parents, but expresses a preference to live with the adopted parents. Respondent and his wife have no children of their own, and are ready to regularly adopt Mattie and raise her as their own, and are able to care for her. Testimony was given ore tenus.

W. R. WALKER and J. B. HOLMAN, JR. for appellant. J. G. RANKIN and W. T. SANDERS for appellee.

SOMERVILLE, J.— (1) In awarding the custody of a minor child as between opposing claimants, the dominant consideration is always the welfare of the child. An important, but strictly subsidiary, consideration, is the highly regarded natural rights of a parent, or secondarily, of a blood relation, or even of a stranger in blood if established in loco parentis.

It has been said in this state that the father of a bastard, merely as such, is not entitled to any preference with respect to its custody.—*Matthews v. Hobbs,* 51 Ala. 210. In that case, however, the contest was between the putative father and the maternal grandmother, the mother being deceased. But, as against a stranger in blood, most, if not all, of the courts accord preferential rights to the putative father, as being in harmony with na-

ture, and for the best interests of the child.—*Pote's Appeal*, 106 Pa. 574, 51 Am. Rep. 540; *Aycock v. Hampton*, 84 Miss. 204, 36 South. 245, 105 Am. St. Rep. 424, 65 L. R. A. 689; *Barela v. Roberts*, 34 Tex. 554; *Moritz v. Garnhart*, 7 Watts (Pa.) 302, 32 Am. Dec. 762; *State v. Nestaval*, 72 Minn. 415, 75 N. W. 725; 2 Kent's Com. 178; 7 Corp. Jur. 955. These authorities, indeed, affirm that the putative father is entitled to the bastard's custody as against any person but the mother.

We are satisfied from the evidence before us that respondent is the father of this child, and the contest must therefore be treated as one between the putative father and the mother, in which the mother has prima facie the superior right of custody.

(2) We are satisfied from the evidence also that petitioner "gave" the child to respondent to be raised by him and his wife in their home. Such a gift, though fully executed, is of course not binding upon the mother in the same sense that an executed gift of property would be binding; nor, as to the child, is such a gift binding at all.—*Marshall v. Reams*, 32 Fla. 449, 14 South. 95, 37 Am. St. Rep. 118, 121. But such a gift or transfer is entitled to much consideration, so far as the mother's rights are concerned, and especially when it has been deliberately made to the putative father. In a well-considered opinion on this subject the Supreme Court of New Jersey said: "I see no reason why the mother of an illegitimate child should not make a contract with the putative father by which she transfers all her rights of custody to the father. She may not be able to make any instrument which will transfer her duties, so far as the law charges her with the duty of supporting her child. It may be conceded that she cannot by any instrument evade that obligation, and that that obligation can be enforced by the court on behalf of her child, in spite of all the instruments of transfer that she might see fit to make. But we are not dealing with that situation here. We are dealing simply with the question of a transfer of a right, and I cannot see any reason why the mother of an illigetimate child should not make a transfer of her right to the putative father."—*Ousset v. Euvrard* (N. J. Ch.), 52 Atl. 1110, 1112.

(3) So in such a case the expressed wishes of the child, it being over seven years of age and of apparent intelligence and discretion is usually accorded great weight by the court: "It is not the whim or caprice of the child which the courts respect, but its feelings, its attachments, its preferences, and its probable

[Tucker, et al. v. Pilcher.]

contentment.  *  *  *  The wishes, however, of children of sufficient capacity to choose for themselves should be given especial consideration when their parents have for a long time voluntarily allowed them to live in the family of another, and the court will make no coercive order in such cases to enforce the mere legal right of the parent to their custody against the manifest inclination and reasonable choice of the children to remain where they are."—Hurd on Habeas Corpus, 532, 533; 3 A. & E. Ency. Law, 888; 7 Corp. Jur. 953.

(4) Independent of the considerations above discussed, the court will have regard for the age and sex of the child, its home surroundings, both moral and material, and, very especially, the relative character and personality of the contesting claimants.

The trial court here had the child and her claimants before it, and heard and saw the witnesses. In view of the evidence we cannot say that the chancellor erred in his conclusion that the interests of the child would be best subserved by leaving her in the custody of her father, the respondent, and we cannot with any sort of assurance, venture to disturb his action.

The judgment will be affirmed.

Affirmed.

ANDERSON, C. J., MAYFIELD, and THOMAS, JJ., concur.