24 So.2d 130

## JACKSON v. FARMER.

### 6 Div. 371.

Supreme Court of Alabama.
Dec. 20, 1945.

Wm. Conway, of Birmingham, for appellant.

Ross, Ross & Ross, of Bessemer, for appellee.

GARDNER, Chief Justice.

Petitioner, a young woman of twenty-five, is the mother of a boy about seven years of age, born out of wedlock. She seeks in this proceeding to recover the custody of this child from his grandmother, Mrs. Betty Jewel Farmer, who is the mother of petitioner. Petitioner has a child (a boy five years of age) by one Lynam, whom she married and from whom she is divorced. She subsequently married John W. Jackson, her present husband, who joins her in this desire for the custody of this child. Petitioner and her present husband have no child of their own. Upon consideration of the cause, and after hearing much testimony offered orally before the court, the trial judge denied the petition, and from this decree the appeal is prosecuted.

It appears clear enough this petitioner's mother not only bore the expense of the birth of this child, but with the exception of short intervals, has all along had its care and made for the boy ample provisions. When it was apparent that in a very short time petitioner would give birth to another child by a marriage with Lynam, it appears this grandmother anticipated there might be unhappy results should this boy, born out of wedlock, be thrown with children of petitioner born as a result of a lawful marriage. And in September, 1940, just prior to the birth of the Lynam child, petitioner with her mother went to the office of an attorney in Tuscaloosa, who prepared the following instrument, which was there duly signed and acknowledged:

"State of Alabama
"Tuscaloosa County

"Whereas, I the undersigned, Mrs. Jean Lynam, am the mother of Charles Albert Reynolds, a minor child age two years. And whereas, my present husband, Eugene Lynam, is not the father of said child. And whereas, I am about to become the mother of a child by Eugene Lynam, my husband. And whereas, my mother, Mrs. Betty Jewel Farmer, has had the custody of this child, Charles Albert Reynolds, for practically all of its life and has had the responsibility of its support and maintenance and medical care and attention. And whereas, my mother, the said Mrs. Betty Jewel Farmer, has property of her own. And whereas, there are ties of love and nature between she and her grandson, Charles Albert Reynolds. And whereas, it is not to the best interests of the said Charles Albert Reynolds to live with me and my husband, Eugene Lynam, who is unrelated to the child, but it is to the best interest of the child, from every standpoint, that said child be raised by its grandmother, said Mrs. Betty Jewel Farmer. And whereas, the child will have better opportunities at the home of its grandmother, and the surroundings and environment of the child will be much better there than anywhere else. And whereas, it is my desire and also the desire of my husband, Eugene Lynam, that I give my mother, Mrs. Betty Jewel Farmer, the said Charles Albert Reynolds. Wherefore, I hereby make declaration in writing that I have given said child to my mother, the said Mrs. Betty Jewel Farmer, and hereby express my desire that she adopt him and make him capable of inheriting a portion of her estate and where the child's opportunities in life will be very much better than with me, in view of my situation.

"In witness whereof I have hereunto set my hand this 17th day of September, 1940.
        "(Signed)   Mrs. Jean Beck Lynam.
"State of Alabama
"Tuscaloosa County

"I, the undersigned, a Notary Public in and for said County and State, hereby certify that Mrs. Jean Lynam, who is known to me acknowledged before me on this day, that being informed of the contents of this paper she acknowledged the same voluntarily on the day the same bears date.

"Given unto my hand this 19th day of September, 1940.
        "(Signed)   Mabel Channel,
                "Notary Public."

The Lynam child is now five years of age, and petitioner and Lynam are divorced, the decree having been issued March 11, 1943. Petitioner, the next day, in the State of Mississippi, married her present husband, John W. Jackson. It was two years later, in March, 1945, when this suit was instituted for the custody of this boy.

So far as we are able to gather from this record, petitioner and her mother are on good terms, and we think the record definitely establishes the fact that the mother, Mrs. Farmer, has all along done her part by her daughter as well as by this grandchild. Admittedly, petitioner was always

a welcome visitor in the home of her mother. Nor has Mr. Farmer ever objected to her visits, and, admittedly, he has always been good to the child.

That the prima facie right to the custody of a child is always in the parents over all other persons is well-nigh universally recognized. And in cases of this character, a child born out of wedlock, the mother has prima facie the superior right of custody. Garrett v. Mahaley, 199 Ala. 606, 75 So. 10

But it is equally well established that this prima facie right of the parent is not an absolute one, but that the question of prime importance is the welfare of the child, which becomes the ward of the court. Nor is the question of comparison of financial ability a matter of controlling influence, though of course to be given some consideration in connection with the ability of the parties to properly care for the child.

Referring to the agreement above indicated as to the custody of this child, the authorities are practically uniform to the effect that parents cannot bind a court of equity by any agreement concerning such custody; and, indeed, the question of custody cannot under our decisions become a matter res adjudicata.

But it is equally well understood that the parent may, however, forfeit this prima facie right to the custody of the child by his or her conduct, and that the relinquishment of such custody to another and continued acquiescence therein are matters to be carefully weighed and considered by the court in determining the question of prime importance—the welfare of the child. These principles have found frequent reiteration in our decisions. Daniels v. Trawick, 232 Ala. 466, 168 So. 551; Payne v. Payne, 218 Ala. 330, 118 So. 575; McGrady v. Brown, 230 Ala. 484, 161 So. 475; Campbell v. Sowell, 230 Ala. 109, 159 So. 813; Children's Aid Soc. v. Davis, 211 Ala. 344, 100 So. 325; Ferguson v. Knight, 241 Ala. 390, 2 So.2d 902; Garrett v. Mahaley, supra. And it will be noted that our decisions are in harmony with the current of authority elsewhere. 46 C.J. p. 1248; note 51 A.L.R. p. 1507 et seq.

The authorities cited by counsel for petitioner (Moss v. Ingram, 246 Ala. 214, 20 So.2d 202; Chandler v. Whatley, 238 Ala. 206, 189 So. 751; McLellan v. McLellan, 220 Ala. 376, 125 So. 225; Fort v. Fort, 246 Ala. 83, 18 So.2d 870; Murphree v. Hanson, 197 Ala. 246, 72 So. 437) have been carefullly examined. But we find nothing in these cases out of harmony with the principles of law above noted. They merely tend to illustrate the well-known rule that each case must be determined from its own peculiar facts. Chandler v. Whatley, supra.

Applying these well-settled principles to the evidence in this case, we are well persuaded the learned trial judge reached the correct conclusion.

We indulge in no detailed discussion of the testimony. Suffice it to say, Mr. and Mrs. Farmer are shown to have excellent reputations. The live in a splendid community in Bessemer. He is a man forty-five years of age and earns a very comfortable living, which averages slightly in excess of $3,000 per year. This defendant, the grandmother, has evidently showered every attention upon this boy. She has not only cared for and nurtured him, but has looked toward his material advancement by two endowment insurance policies and the purchase of several war bonds in his name. She carries him quite a distance to a private school. Adoption proceedings had been instituted when this suit was filed, and this grandmother was to give the boy the Farmer name. The record is without dispute that the boy and Mr. Farmer are boon companions, and that the boy is well, happy, and contented. Defendant's home bears every indication of being well and neatly kept. The welfare agent, however, who visited the home of petitioner, makes a very unfavorable report as to the condition of her household. And we think it may be said that the record also discloses the trial judge was evidently unfavorably impressed as to petitioner's way of life.

But we forego further discussion. We are well convinced, after a careful study of this evidence, that the decree rendered looks decidedly to the welfare of this child, is entirely correct, and should be here affirmed. It is so ordered.

Affirmed.

BROWN, LIVINGSTON, and SIMPSON, JJ., concur.