94 So.2d 393

June HORTON

v.

Max V. GILMER et ux.

6 Div. 68.

Supreme Court of Alabama.

Feb. 21, 1957.

Rehearing Denied April 25, 1957.

N/A

Taylor, Higgins, Windham & Perdue, Birmingham, for appellees.

Wilton W. Rabren, Lokey & Rabren, Columbiana, for appellant.

Mary A. Lee, Montgomery, for State Department of Pensions and Security, amicus curiae, in support of appeal.

SIMPSON, Justice.

This appeal involves the custodial status of an infant. The decree denied a petition of the natural mother for a writ of habeas corpus for her illegitimate female child against the appellees who are in *loco parentis* by virtue of the mother's voluntary agreement to relinquish custody of the child to them. The question presented is whether the decree of the trial court leaving the custody of the infant with its foster parents is correct.

■ The paramount consideration, of course, in dealing with the custody of an infant is the best interest and welfare of the child. 15 Alabama Digest, Parent & Child, ☜2(3).

■ In passing on the question of whether a parent who has voluntarily relinquished custody of a minor child should be entitled to regain custody, each case must be determined from its own peculiar facts. Jackson v. Farmer, 247 Ala. 298, 24 So.2d 130.

A short recital of the evidence will suffice to illustrate the soundness of the decree below. The evidence shows without conflict that the mother of the child became pregnant as the result of an adulterous relationship with an officer in the Air Force. The mother stated that her former husband was not the father of the child and that the Air Force officer was the father, but she refused to name him. The appellant's husband testified that the appellant voluntarily left him in September of 1954, and that they had not had marital relations since then, and further that he was not the father of the child in question. The child was born on April 26, 1956. The husband obtained a divorce from the appellant in October of 1955, on the ground of abandonment. The appellant was married to her husband at the age of 16 and was 20 years old when the child was born. The appellant testified that after she left her husband in September of 1954, she went to live in the home of her parents at Calera, Alabama. She then went to Selma, Alabama, and worked in a five and dime store. From Selma, she went to Pensacola, Florida with three girl friends and stayed three weeks. She returned to the home of her parents from Pensacola, and remained there until July, 1955, when she went to Birmingham, Alabama. While in Birmingham, she worked in Johnny Ray's Barbecue as a waitress for three weeks. Around the first of September, 1955, she returned to the home of her parents in Calera, where she stayed until November, 1955. She then went to Columbus, Georgia, and around the 1st of December, 1955, she returned to her parents where she remained until about March 19, 1956. We mention the various peregrinations of the appellant as indicative of her wayward tendencies, her lack of stability and no regular employment.

On March 19, 1956, the appellant, after denying to her parents that she was pregnant, went to Birmingham, Alabama, and called Johnny Ray, her former employer. The appellant revealed her pregnant condition to Mrs. Johnny Ray and said she did not want the baby. The appellant requested that she be put in contact with

someone who would adopt the baby and defray her expenses. As a result of the appellant's request, she was put in contact with appellee, Dr. Max V. Gilmer, a dentist. Although the Gilmers were desirous of adopting a child, he was very cautious in his dealings with the appellant. Dr. Gilmer had competent legal advice and furnished the appellant counsel who discussed the matter fully with her. The appellant was advised to go to the Salvation Army Hospital for unwed mothers or the Welfare Department, but she insisted that she would go neither place. It was her desire that she place the child with someone who would furnish the child a good home and defray her expenses. The Gilmers, then, accepted the appellant's offer for them to have custody of her child after it was born, and immediately put her under the care of a competent obstetrician. They have, up to the time of this suit, expended some $1,200 for doctor's bills, hospital bills, food, housing and clothing on appellant's behalf, before, during and after the birth of the child.

The appellant lived up to her agreement for a while. Three days after the birth of the child she signed, in the presence of a Notary Public, a document consenting to the adoption of her child by the Gilmers. Custody of the child was given the Gilmers four days after its birth on May 1, 1956, by the appellant, after her discharge from the hospital. On May 15, 1956, the appellant contacted an attorney with a view of regaining custody of her child. On May 24, the appellant called her attorney and left word for him to drop the proceedings. On June 13, 1956, she contacted her attorney again and instituted the present habeas corpus proceeding which is before us now. The Gilmers have filed a petition for the adoption of the child, but the court has taken no action thereon.

If the appellant regains custody of her child, she plans to live with her mother and father. Her parents' home is a six-room frame house, with three bedrooms. Four of the appellant's younger brothers live there with the mother and father. This is a good home, and the parents are willing to provide for appellant and her baby to the best of their financial ability, but the father expressed, at one time, a fear that the appellant might bring the child there and then go off and leave it, which—considering appellant's prior conduct—might well be the case. He first told the appellant that she could not bring the child to his home, but he later changed his mind and gave his consent. The appellant has no income of her own. The appellant's father earns about $300 per month as a combined income from his work as a preacher and as a fender and body repairman. On this income he supports six people, which includes the appellant.

The Gilmers have a three-bedroom brick home in a good neighborhood. The evidence is without dispute that they are fit and proper persons to have the custody of the child, and are able to provide the child with a proper home and care. Max V. Gilmer is a dentist, practicing in the City of Birmingham. Mrs. Gilmer has a Master of Arts Degree in education and taught school from 1947 until shortly before they were given custody of the child. Since they have had custody of the child, Mrs. Gilmer has not taught school but has concentrated on the raising of the child. Only the Gilmers and this one child are in the home.

The trial judge—who by the way has had much experience in adjudicating such matters—heard the evidence ore tenus and decreed that the best interest of the child was with its foster parents. We are unable to overturn this finding.

True, prima facie, the parent is entitled to the custody of a child and with respect to one born out of wedlock the mother's prima facie right is regarded as paramount; but this prima facie right may be forfeited. Barnett v. Harvel, 257 Ala. 600, 60 So.2d 435; Jackson v. Farmer, supra.

**128**

As of course, an agreement by a parent for the custody of a child cannot bind a court of equity, nor is the question of custody ever res judicata. Barnett v. Harvel, supra; Jackson v. Farmer, supra. Nor is financial ability a matter of controlling influence, though of course to be given some consideration in connection with the ability of the parties to properly care for the child. Edwards v. Sessions, 254 Ala. 522, 48 So.2d 771; Jackson v. Farmer, supra.

But, we do look to an agreement between the parties to help us arrive at what is the best interest of the child. Barnett v. Harvel, supra.

We have approved the following statement of the rule from Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623:

"Where a parent has transferred to another the custody of his infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless he can show that a change of the custody will materially promote his child's welfare."

Barnett v. Harvel, supra; Stifflemire v. Williamson, 250 Ala. 409, 34 So.2d 685; Greene v. Greene, 249 Ala. 155, 30 So.2d 444.

Being mindful of our solemn duty in cases where the custody of a minor child is concerned, we have examined all of the evidence in this case with painstaking care and cannot say with any degree of certainty the decree awarding custody of the minor child to its foster parents was against the weight of the evidence or manifestly unjust.

Other tendencies of the evidence might be alluded to as indicating the impropriety of having custody transferred to petitioner, but we think we have said enough to indicate our view of the case.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.