This appeal arises out of a dispute between the paternal and maternal grandparents over which ones should have the custody of their grandchild.
The Sparkses' daughter, Connie, and the Johnsons' son, Michael, were married on December 31, 1981. On December 4, 1982 Connie and Michael were killed in an automobile accident. They left surviving them an infant child, Kelly Dawn Johnson, born August 14, 1982, who is the subject of this controversy.
Mike and Connie lived with the Johnsons for about a month after they were married, but resided with the Sparkses for the last seven months of their marriage. Kelly was born while the couple was residing with the Sparkses. Kelly continued to reside with, and was cared for by the Sparkses after the couple's death.
On December 29, 1982 the Sparkses filed a petition seeking custody of Kelly, and the Circuit Court of Madison County granted them temporary custody. On January 18, 1983 the Johnsons filed a motion to intervene and on January 25, 1983 filed their petition for custody of Kelly.
Both custody petitions were heard ore tenus on March 17, 1983. On April 27, 1983 the trial court entered a decree awarding primary custody of Kelly to the Sparkses with liberal visitation rights in the Johnsons. The trial court also directed the Sparkses to set up a trust fund with a local bank to hold forty percent of Kelly's social security benefits and invest them for her education, subject to invasion for necessary expenses. The Sparkses established this trust with the First National Bank of Alabama-Huntsville.
In support of their appeal, the Johnsons contend that awarding custody to the Sparkses was clearly adverse to Kelly's best interests and welfare both now and in the future. The paramount consideration in every child custody case is the best interests of the child. Robertson v. Robertson, 415 So.2d 1085
(Ala.Civ.App. 1982). In determining what is in the best interests of a child, a trial court considers numerous factors including the sex and age of the child, the child's emotional, social, moral, material, and educational needs, the parties' age, character, stability, health, and home environments, the interpersonal relationship between the child and the parties, the effect on the child of a disruption of the custody arrangement, and the parties' success in raising other children. Ex parte Devine, 398 So.2d 686 (Ala. 1981). The award of custody of a child is within the sound discretion of the trial court and its decision will not be set aside unless it is so contrary to the evidence as to be plainly and palpably wrong. Nesmith v. Nesmith, 419 So.2d 247 (Ala.Civ.App. 1982). Appellants argue *Page 1310 
that the evidence fails to support the trial court's finding that Kelly's best interests would be served by placing her custody with the Sparkses and, thus, should be set aside.
The evidence shows that the child in question has lived with the maternal grandparents, the Sparkses, since her birth and the child's parents lived with the Sparkses for about seven months prior to their death.
The Sparkses were married in 1960 and have three children who still live at home. The two boys work and contribute $200 per month to the family's living expenses. The Sparks family lives in a double-wide house trailer with four bedrooms and two bathrooms.
Mr. Sparks is a subcontractor in the building industry and presently earns about $1,200 per month. Mrs. Sparks formerly worked in a local textile mill, earning about $10,000 per year. She quit work shortly after the daughter's death to take care of the child. She said that if it became necessary she could resume her work at the mill.
The Sparkses had marital problems beginning in late 1980 and resulting in a divorce in March 1981. The parties subsequently reconciled and remarried. During the period of separation, Mr. Sparks had a drinking problem and, coupled with the depression in the building industry, earned very little money during the years 1980, 1981, and the early part of 1982.
Since the Sparkses' reconciliation, Mr. Sparks has not had a drink of alcohol, has become employed, and goes to church regularly.
The evidence shows that the child in question is well-cared for and well-loved. Mrs. Sparks applied for and obtained social security benefits for the child in the amount of $205.60 per month. Forty percent of this amount is placed in a trust fund and administered by a local bank for the child's education.
The Johnsons point out in brief that the educational level of the Sparks family is about at the grammar school or junior high school level, whereas their family members have all completed high school. In view of this evidence and the evidence that an educational trust fund has been created for the child by the Sparkses, the trial court could have decided that the Sparkses intended that their grandchild would receive the education that they failed to obtain. Moreover, it is interesting to note that the Johnsons have not contributed anything to the maintenance or education of their grandchild since the parents' death.
The Johnsons also argue that they are in a better financial condition to provide for the child than are the Sparkses. It is true that Mr. Johnson's gross income is considerably more than Mr. Sparks' income. However, the Johnsons have a sizeable amount of monthly indebtedness which reduces considerably the amount of spendable income available to them. But, assuming that the Johnsons do have more spendable income than the Sparkses, the financial ability of a party to care for a child whose custody it is seeking is not the controlling factor but is just one factor along with others for the court to consider in awarding custody of a child. Horton v. Gilmer, 266 Ala. 124,94 So.2d 393 (1957).
Based on the evidence in the record before us, we are convinced that the trial court's award of the child's custody to the Sparkses is not contrary to the evidence, nor is it plainly and palpably wrong.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 1311