The parties to this appeal were divorced by a decree of the Circuit Court of Montgomery County. A settlement agreement was incorporated into their divorce decree. No children were produced from their union.
The wife had a child by a previous marriage. She has custody of that child by a prior divorce decree.
A part of the parties' settlement agreement, entitled "Property Settlement Agreement," provides:
 "5. The Husband [Pal Charlie Shoemaker] shall have reasonable visitation, to be agreed upon by the parties, with Ryon [Scott] Clark, son of the Wife [Cynthia Breed Shoemaker] and stepson of the Husband."
Pal Charlie Shoemaker, hereinafter "former husband," filed a petition to hold Cynthia Breed Shoemaker, hereinafter "former wife," in contempt "for her willful violation of this Court's Order by refusing [to allow the exercise of the former husband's] visitation rights." The former wife's answer asserted that, pursuant to her "prior" divorce decree (from the minor child's natural father), the natural father was awarded certain visitation rights with their child, Ryon Scott Clark, that the natural father was exercising these visitation rights, and that the exercise of visitation rights by the former husband/stepparent, Pal Charlie Shoemaker, would not be in the best interests of the minor child.
In a preliminary order granting the former husband's motion for continuance, the trial court directed that at the impending hearing:
 "[T]he Former Husband/Petitioner shall show to the Court upon what ground he alleges that this Court had or now has jurisdiction to determine visitation rights [with] a child not born of the marriage and not adopted by the [former husband] in a divorce action between the parties; and further upon what grounds this Court would have jurisdiction to make a finding of contempt [upon violation] of such an order."
After arguments of counsel were presented, the trial court issued an order which dismissed the former husband's petition for failure to state a claim upon which relief can be granted. He appeals that dismissal.
Under the common law and our statutes, natural parents have a prima facie legal right to the custody, care, and control of their children to the exclusion of all others. See, Mousseauv. White, 532 So.2d 1023 (Ala.Civ.App. 1988); 67A C.J.S.Parent and Child §§ 16 through 19 (1978). The rights of natural parents to the care, custody, and control of their children will not be overturned unless and until the natural parents are determined to be unfit or incapable of providing for the best interests and welfare of the children. Mousseau. However, under appropriate circumstances, our supreme court has recognized that the rights of "nonparents" to the custody, care, and control of children can supersede those of the natural parent.See, Ex parte Berryhill, 410 So.2d 416 (Ala.Civ.App. 1982).
If a parent is awarded custody of a child, grandparents and other "nonparents" are not necessarily entitled to visitation privileges. See, 67A C.J.S. Parent and Child § 41(c) (1978);cf., § 30-3-4, Code *Page 1034 
1975 (granting grandparents the "privilege" of petitioning a circuit court for visitation) and, Kewish v. Brothers, 279 Ala. 86, 181 So.2d 900 (1966) (no error in awarding maternal grandparents certain visitation "rights," when father and mother divorced, mother had died, and child had "spent most of her time in the home" of the maternal grandparents).
The award of visitation privileges is a matter left to a trial court's discretion, guided by what will protect and enhance the best interests and welfare of the child. See,Jackson v. Jackson, 520 So.2d 530 (Ala.Civ.App. 1988).
In former husband's petition he alleged only that the former wife "is in contempt of the Court for her willful violation of this Court's Order [awarding reasonable visitation] by refusing [to allow the exercise of the former husband's] visitation rights." No allegation or assertion was made by former husband which tended to show the mother as unfit or unsuited, nor that the best interests and welfare of the child were in jeopardy. Recognizing that "nicety of pleading" is to be disregarded in matters concerning the best interests and welfare of the child, our review of the record does not disclose any matter which raises, expressly or by implication, that the best interests and welfare of the child were at issue. See, e.g., Ex parte Bronstein, 434 So.2d 780
(Ala. 1983).
There is no prohibition against a former stepparent seeking, and being awarded in appropriate circumstances, visitation privileges with their former stepchild if the best interests of a child are involved and brought to the attention of a trial court. See, Kewish; Horton v. Gilmer,266 Ala. 124, 94 So.2d 393 (1957); Chandler v. Whatley, 238 Ala. 206,189 So. 751 (1939); Willette v. Bannister, 351 So.2d 605
(Ala.Civ.App. 1977).
It may be questioned whether the best interests of a child would be served if the exercise of visitation by a former stepparent was against the wishes of the natural parent. The privilege of a stepparent to visit or have contact with the natural child of another is linked with and dependent upon the relationship between the stepparent and natural parent; the legal severance of the stepparent-natural parent relationship would also sever any legal relationship of the stepparent-stepchild for all practical purposes. To force a former stepparent's (legally a mere "non-parent") visitation upon a natural parent or the former stepchild, over either's objection, would appear to be a detriment to the best interests of the child. See, Ex parte Bronstein.
Incorporated into the parties' divorce decree by reference was the proviso in the separation agreement granting the former husband "reasonable visitation, to be agreed upon by the parties" with the child. It is clear that the exercise of visitation was conditioned upon the agreement of the parties. Notwithstanding this patent ambiguity in terms, a former stepparent has no right, either by statute or common law, to visitation privileges with a former stepchild. An agreement between parties cannot operate to "create" a right that does not exist. Our review of the case law on the subject of "former stepparent visitation privileges" reveals that, only after the best interests and welfare are raised and shown to be advanced by such visitation, would a trial court then have the discretion to award such privileges. See, e.g., Chandler. Such an award would not arise from the relationship or a legal privilege (as granted by statute to grandparents, § 30-3-3) but from the inherent power of the court to act to promote the best interests of a child. We opine that factual situations would be rare indeed sufficient to support such an order. The mere agreement between the parties concerning such privileges was effective only as between the parties and is not alone sufficient to awaken the conscience of the court.
The decree of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of section12-18-10(e), Code *Page 1035 
1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.