645 So.2d 303 (1994)
Ex parte D.J.
(Re W.B.Z. v. D.J. (In the Matter of B.W.J., a minor)).
1921141.
Supreme Court of Alabama.
August 5, 1994.
*304 Sarah S. Frierson, Mobile, for petitioner.
Jay M. Ross of Reid, Friedman, Perloff & Ross, Mobile, for respondent.
PER CURIAM.
D.J., the maternal grandmother of B.W.J., a minor, sought custody of B.W.J. The Mobile County Juvenile Court awarded her custody, and W.B.Z., the child's father, appealed. The Court of Civil Appeals reversed the judgment of the trial court.[1] We granted D.J.'s petition for certiorari review, and we affirm the judgment of the Court of Civil Appeals.
B.W.J. was born in 1983 to V.J. and W.B.Z., who never married. From the date of his birth until April 27, 1991, he and his mother, V.J., lived intermittently with D.J. On April 27, 1991, however, V.J. died. Thereafter, but before July 19, 1991, W.B.Z. petitioned the probate court for a judgment of legitimation of B.W.J. His petition was granted on September 5, 1991.
On July 19, 1991, D.J. petitioned the juvenile court for temporary custody of B.W.J., and a hearing was convened in the juvenile court on November 18, 1991, to consider her petition. Subsequently, the court granted the petition, but awarded W.B.Z. visitation privileges at W.B.Z.'s home in Arlington, Texas, for 10 weeks during the summer, for one week during Christmas vacation, for the duration of spring vacation, and for "such other visitation as may be arranged by the father and the grandmother." Also, the court scheduled a second hearing in order to review "whether or not the child [had so] *305 progressed in his relationship with the father... that it would be appropriate for the child to be placed in the home of the father."
After the second hearing, which convened on August 19, 1992, the court entered an order in which it found, inter alia, that W.B.Z. and the "stepmother [were] able and anxious to provide for the child." However, it further stated: "[T]he court does find that it is in the best interest of [B.W.J.] that custody remain with [D.J.] ... and that a change in custody to [W.B.Z.] would not materially promote the child's welfare so as to overcome the inherently disruptive effect caused by uprooting the child." (Emphasis added.)
The Court of Civil Appeals, in a judgment joined by a majority of the court, reversed. It held that the trial court erred in failing to afford W.B.Z. the benefit of a parental "presumption," that is, a presumption that the interests of B.W.J. would best be served by placing the child in his custody absent a finding that he was unfit.
D.J. petitioned this Court for certiorari review of the judgment of the Court of Civil Appeals, contending that the parental presumption is inapplicable to cases involving children born out of wedlock. Alternatively, she contends that the presumption is inapplicable under the facts of this case. We granted D.J.'s petition in order to consider these questions.

I. Parental Presumption
The courts of this state, in accord with the common law, have long presumed that the entrustment of children to the care and custody of their natural parents serves the best interests of the children. For example, in Striplin v. Ware, 36 Ala. 87, 89-90 (1860), this Court explained:
"The law devolves the custody of infant children upon their parents, not so much upon the ground of natural right in the latter, as because the interests of the children, and the good of the public, will, as a general rule, be thereby promoted. It is a fair presumption, that so long as children are under the control of their parents, they will be treated with affection, and their education and morals will be duly cared for.
"... So strong is the presumption, that `the care which is prompted by the parental instinct, and responded to by filial affection, is most valuable of all'; and so great is the reluctance of the court to separate a child of tender years from those who according to the ordinary laws of nature, must feel the greatest affection for it, and take the deepest interest in its welfare  that the parental authority will not be interfered with, except in case of gross misconduct or where, from some other cause, the parent wants either the capacity or the means for the proper nurture and training of the child."
See also Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983) ("The prima facie right of a natural parent to the custody of his ... child, as against the right of custody in a nonparent, is grounded in the common law concept that this primary parental right ... is in the best interest ... of the child as a matter of law" [emphasis in Mathews ]); Ex parte Berryhill, 410 So.2d 416 (Ala.1982); Ex parte Sullivan, 407 So.2d 559, 563-64 (Ala.1981) ("The law recognizes that a higher authority ordains natural parenthood, and a fallible judge should disturb the relationship thus established only where circumstances compel human intervention"); Harris v. Harris, 251 Ala. 687, 39 So.2d 232 (1949); Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939) ("The law, indulging the presumption that the welfare of [the] child will be best conserved by awarding her custody to her father, rather than the step-father, ordains that this shall be done, unless such presumption is overcome by clear and convincing evidence that the father is ... unfit"); Stoddard v. Bruner, 217 Ala. 207, 115 So. 252 (1928). These cases thus reveal not only the antiquity of the rule followed in this state but also the policy and rationale underlying the parental presumption.
In this connection, we are compelled to reject D.J.'s argument that a natural father seeking custody of his illegitimate child after the mother's death should not be afforded the benefit of the parental presumption. For this proposition, D.J. has cited no *306 authority, and, in our view, the law and policy of this state are to the contrary. For example, this Court recognized long ago that the "putative father of [children born out of wedlock], desiring the custody and control of them, is entitled to it against all but the mother, if competent to care for and suitable to take charge of them." Lewis v. Crowell, 210 Ala. 199, 200, 97 So. 691, 692 (1923) (award of custody to the father of illegitimate children was proper in a contest with the children's maternal uncle, where evidence demonstrated that the father was "a suitable person to have them"). More recently, this Court explained that in a custody contest "`between a parent [of illegitimate children] and a stranger the custody cannot be awarded to the latter unless the parent is found to be unfit and improper as custodian.'" Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910 (1955).
Moreover, no reason appears why a natural father in the position of W.B.Z. should not be presumed susceptible of the same paternal affections and nurturing tendencies as fathers of children born within the bonds of marriage. Indeed, the application of the parental presumption in such cases promotes the sound policy of encouraging fathers to fulfill their paternal roles. We hold, therefore, that in a custody contest between a nonparent and one who has been adjudicated to be the natural father of a child born out of wedlock, the father is entitled to the presumption that the child's interests will best be served by an award of custody to him, subject to the absence of a finding that he is unfit and subject to the exceptions discussed infra.

II. Exceptions
D.J. contends that the judgment of the trial court was proper under either of two well-established exceptions to the parental presumption rule. Specifically, the parental "presumption does not apply after [1] a voluntary forfeiture of custody or [2] a prior decree removing custody from the natural parent and awarding it to a nonparent." Ex parte McLendon, 455 So.2d 863, 865 (Ala. 1984). Where these exceptions apply, "`the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] child's welfare.'" Id. at 865 (emphasis added) (quoting Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), and Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687 (1898)). In its August 19, 1992, order, the trial court clearly applied the standard required under these exceptions to the parental presumption. We must consider whether either of them is applicable.

A. Voluntary Forfeiture
D.J. first insists that the judgment was supported by evidence that W.B.Z. had "willingly relinquished custody to the mother," Brief in Support of Petition for Certiorari, at 3 (emphasis added), "and to [the] grandmother." Id. at 4. In this respect, she essentially adopts the view of Judge Thigpen, who concurred in part with the opinion of the Court of Civil Appeals and dissented in part. He stated:
"The record reveals that the parents never married and that the child lived with its mother until her death. The father's involvement with the child has been negligible since he moved to Texas when the child was three years old. Additionally, it is only after the mother's death that the father pursued legitimization proceedings and [sought] custody. Under the circumstances, it is my opinion that the cause should be remanded to the trial court for determination of whether the father's prolonged absence is tantamount to `voluntary relinquishment' to the mother and also the maternal grandmother."
(Emphasis added.) As to this proposition, we disagree with D.J. and with Judge Thigpen.
"Relinquishment" is defined as "[a] forsaking, abandoning, renouncing or giving over a right." Black's Law Dictionary 1161 (5th ed. 1979) (emphasis added). Voluntary relinquishment is thus essentially synonymous with the concept of "waiver," which has been defined as the "voluntary and intentional surrender or relinquishment of a known, right." "Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala.1984) (emphasis added). By definition, therefore, a party "cannot waive a right of which he is unaware," Webb v. State, 539 *307 So.2d 343, 353 (Ala.Crim.App.1987), and, a fortiori, cannot waive or relinquish a right that does not exist. As we shall next explain, it is the absence of a right residing in W.B.Z. before V.J.'s death that renders D.J.'s relinquishment argument untenable.
"There is a strong presumption in Alabama, which has not been modified or abolished either judicially or legislatively, that the mother of a child born out of wedlock has a superior right of custody over all other persons, absent good cause that custody should not be vested in her." Rainer v. Feldman, 568 So.2d 1226, 1227 (Ala.1990); see also Barnett v. Harvel, 257 Ala. 600, 602, 60 So.2d 435, 437 (1952) ("with respect to [a child] born out of wedlock the mother's prima facie right is regarded as paramount"); Jackson v. Farmer, 247 Ala. 298, 300, 24 So.2d 130, 132 (1945) (as to "a child born out of wedlock, the mother has prima facie the superior right of custody"); Garrett v. Mahaley, 199 Ala. 606, 608, 75 So. 10, 11 (1917) ("putative father is entitled to the [illegitimate child's] custody as against any person but the mother").
Rainer involved two actions, separately begun and simultaneously prosecuted by Aretha Rainer and Louis Vinson, seeking damages for the wrongful death of their illegitimate child. The trial court dismissed the mother's action on the ground that the father had filed his complaint first. This Court reversed, noting that Ala.Code 1975, § 6-5-390, vested the right to prosecute an action for the wrongful death of a child born out of wedlock solely in the parent "having legal custody." Rainer, 568 So.2d at 1227 (emphasis in Rainer). It held that the "superior right of custody," id. at 1227, long enjoyed by the mothers of children born out of wedlock, rendered Rainer the "legal" custodian, and, therefore, the proper party to prosecute the action under the statute. Id. at 1228.
Guided by this rule, we conclude that W.B.Z., a putative father who, before V.J.'s death never possessed legal or physical custody of his unlegitimated child, acquired no custody rights that could have been relinquished to V.J. Custody vested exclusively in V.J. at the birth of her child and remained there until she died on April 27, 1991. W.B.Z. did not, therefore, relinquish any custody rights before V.J.'s death, because  visa-vis V.J., at least  he possessed none.[2] Moreover, his promptness in initiating legitimation proceedings and in seeking custody after her death conclusively rebuts any contention that he relinquished custody rights thereafter. Thus, we conclude that the "relinquishment" exception to the parental presumption provided no basis for the standard applied by the trial court in this case.

B. Prior Award of Custody
The second exception articulated in McLendon applies where custody has been transferred from the natural parent to a nonparent by a "prior decree." D.J. urges this Court to hold that the November 18, 1991, order was a "prior decree" and shifted the burden to W.B.Z. to show "that a change of the custody will materially promote his child's welfare." Id. at 865. As to this contention, however, the following remarks in Ex parte R.C.L., 627 So.2d 920 (Ala.1993), are particularly pertinent:
"We agree that this was a pendente lite order, because the trial court directed that home studies of the parties be conducted, and the trial court also reserved the question of permanent custody; therefore, it seems clear that the trial court intended for the order to be effective only during the pendency of the litigation. Furthermore, as to an issue not previously addressed by this Court, but consistent with a number of decisions of the Court of Civil Appeals, we also agree that the McLendon rule does not apply to pendente lite orders, so that such orders do not defeat the presumption in favor of the natural parent."
Ex parte R.C.L., 627 So.2d at 921-22. Similarly, we conclude that the November 18, 1991, order, which scheduled a second hearing in this case in order to review "whether or not the child [had so] progressed in his relationship with the father ... that it would *308 be appropriate for the child to be placed in the home of the father," was an order pendente lite, and, therefore, that the parental presumption remained intact.
Moreover, because W.B.Z. had not acquired custody before November 18, 1991, it can hardly be contended that the order on that date "removed" or transferred custody from him. Therefore, we conclude that the "prior decree" exception to the parental presumption provided no basis for the standard applied by the trial court in this case.
For these reasons, the judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, INGRAM and COOK, JJ., concur.
NOTES
[1] Because Judge Thigpen dissented in part in a separate opinion, we have not limited our review to the facts stated by the Court of Civil Appeals in its opinion, but have independently reviewed the record. Shuttlesworth v. City of Birmingham, 281 Ala. 542, 206 So.2d 348 (1967) (Where there is a dissenting opinion in the Court of Appeals, the Supreme Court may go to the "original record to determine the facts"), rev'd on other grounds, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Johnson v. State, 287 Ala. 576, 581, 253 So.2d 344, 346 (1971) ("We do review the evidence as set out in the record where there is a dissenting opinion in the Court of Appeals and evidence is set out in the dissenting opinion as well as in the majority opinion" (Lawson, J., concurring specially)).
[2] This case is, therefore, clearly distinguishable from one involving the issue whether the mother of a child born out of wedlock had voluntarily relinquished custody. See T.I. v. R.C.L., 627 So.2d 916 (Ala.Civ.App.1992), rev'd, Ex parte R.C.L., 627 So.2d 920 (Ala.1993).