STUART, Justice
(concurring in the result in part and dissenting in part).
On December 20, 2000, this Court ordered the parties to mediate their dispute. However, the parties have failed to resolve this matter through mediation, and it is again before this Court on application for rehearing.
I was not a member of this Court on November 17, 2000, when it released its opinion in this case. Had I been a member, I would have dissented. I now dissent from the part of the opinion reversing the Court of Civil Appeals’ judgment affirming the trial court’s order terminating C.V.’s parental rights and granting the adoption by the prospective adoptive parents. A majority of the Court does not agree; therefore, I concur only in the result.
I agree with those Justices who dissented from the original opinion, which included Justice Houston and Justice Brown, who continue to sit on this Court, that the judgment of the Alabama Court of Civil Appeals is correct. More specifically, I agree with Justice Houston that an unborn child is a child and that because a “minor” is defined as a “child,” an unborn child is included within the definition of a minor.[10]
Three proceedings were consolidated in this action, a circuit court action seeking full faith and credit for an order of a Florida court, a probate court adoption proceeding, and a juvenile court termination-of-parental-rights proceeding. This consolidation has caused the case to be complex and confusing.
When a trial court is presented evidence ore tenus, its findings of fact are presumed correct, and its judgment based on those findings of fact will not be reversed unless it is clearly erroneous, manifestly unjust, without supporting evidence, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). A plurality of this Court on November 17, 2000, found the ore tenus rule inapplicable, holding that, as a matter of law, the father’s pre-birth conduct toward the birth mother was not relevant to determining whether the father abandoned Baby Boy G. I respectfully disagree. C.V. intentionally and voluntarily relinquished his rights to Baby Boy G. when he failed to assert his rights and to accept his responsibility for the child and the child’s mother before his birth.
C.V.’s prebirth conduct is relevant to the issue of abandonment by C.V., as the *729 Court of Civil Appeals correctly pointed out in its opinion. C.V. v. J.M.J., 810 So.2d 692, 699 (Ala.Civ.App.1999). The holdings of the Florida courts that a parent’s prebirth conduct can constitute abandonment are persuasive and highly relevant; they governed C.V.’s conduct before his child’s birth because the child was conceived and born in Florida.
We need not rely on Florida law, however, to conclude that a father can abandon a child before its birth. A look at the Alabama Uniform Parentage Act is instructive. Section 26-17-9(b), a part of that Act, provides that an action to determine paternity may be commenced upon the complaint of any female who is pregnant or who is the mother of a child. Likewise, other appropriate parties, including a putative father, may bring a paternity action before the birth of a child. Ala.Code 1975, § 26-17-6.
It is firmly established in this state that the marital status of the parents does not affect parental obligations. Ex parte Jones, 592 So.2d 608 (Ala.1991). Surely no one would argue that married parents have no obligation to, or responsibility for, their unborn children. Unmarried parents have the same obligations and responsibilities that we readily assume married parents have and will fulfill.
Justice See, in his special writing, notes that because a parent can expressly consent before the child’s birth to a child’s adoption (see Ala.Code 1975, § 26-10A-11(2), § 26-10A-13 (a)and(b)), a parent can likewise impliedly consent to the child’s adoption before the child’s birth. He also states that that implied consent, like express consent, can be withdrawn. (See, J., concurring specially, 810 So.2d at 703). Justice See states:
“The trial court found that C.V. had ‘abused and abandoned [the birth mother] physically, emotionally, and financially, during her pregnancy with [Baby Boy G.]’ by failing to provide her any financial support, by physically abusing her during her pregnancy, and by moving out of the apartment where they lived and taking almost everything with him, including the food, the dishes, the Christmas tree (C.V. moved during the holiday season), and all the furniture except a bed. Although C.V. vigorously disputes this recitation of facts, the record contains sufficient evidence to support the trial court’s findings. Because C.V.’s conduct before the birth of Baby Boy G. was inconsistent with accepting the responsibilities of fatherhood, it could be construed to constitute implied consent to the adoption. However, ... C.V.’s actions after he learned of the birth of his son clearly indicate his intent to withdraw his implied consent to the adoption.”
810 So.2d at 706.
While Justice See finds C.V.’s prebirth conduct was inconsistent with his accepting the responsibilities of fatherhood and as constituting an implied consent to Baby Boy G.’s adoption (which consent Justice See believes is revocable), I find C.V.’s prebirth conduct relevant and persuasive evidence indicating that C.V. did not assume the responsibilities of a father and that he, therefore, relinquished his rights as a father. Thus, I believe his conduct acted as more than implied consent to adoption under § 26-10A-11; I believe it constituted abandonment as that term is defined in the 1984 Child Protection Act, § 26-18-1 et seq., Ala.Code 1975. Abandonment is defined in the Child Protection Act as: “[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, *730 maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent or failure to perform, the duties of a parent.” Ala.Code 1975, § 26-18-3(1). Under the Child Protection Act, there is no requirement that the parent’s conduct evidencing' the relinquishment of his parental rights occur after the child’s birth. This is true for abandonment as well as several other grounds enumerated in the Child Protection Act pursuant to which parental rights can, by operation of law, be terminated. These grounds include among others, the torture, abuse, beating, or maltreatment of a sibling, or the parent’s conviction of, and imprisonment for, a felony. Ala.Code 1975, § 26 — 18—7(a)(3) and (a)(4). This conduct may occur before a child’s birth and provide grounds for termination of parental rights by operation of law.
Section 26-18-7(c) provides a rebuttable presumption that where parents have abandoned a child and that abandonment continues for a period of six months next proceeding the filing of the petition to terminate parental rights, the parents are unable or unwilling to act as parents. This provision, however, does not limit the trial court’s consideration to the parents’ conduct only for the six months preceding the filing of the petition. The trial court may, and should, consider any and all relevant conduct.
The Court of Civil Appeals has held that the trial court may consider evidence of past conduct and family history as well as present circumstances in determining whether to terminate parental rights. Unsuccessful attempts to abort a child have been considered evidence supporting a termination of parental rights. Brand v. Alabama Dep’t of Pensions & Security, 479 So.2d 66 (Ala.Civ.App.1985). (I note that the record in this case reveals that C.V. presented the birth mother with a check that he suggested she use to pay for an abortion.)
In my opinion, C.V.’s prebirth conduct constitutes abandonment under § 26-18-7(a)(1), Ala.Code 1975. I also believe the trial court, in determining that C.V.’s parental rights had been terminated by operation of law and that, therefore, his consent to the adoption was not required, correctly considered C.V.’s failure to pay a reasonable portion of the child’s support, an additional consideration under § 26-18-7(b)(1). The record establishes not only that C.V. failed to provide Baby Boy G.’s mother any financial support before Baby Boy G.’s birth, but also that he has paid no support since the child’s birth and that he has paid nothing toward the expenses of the child’s birth. While some members of this Court excuse C.V.’s nonpayment of child support, I believe he had an obligation to support the child’s birth mother before Baby Boy G.’s birth and to pay child support until the date the prospective adoptive parents were granted an interlocutory decree in the adoption proceeding. C.V. has asserted his rights, but he has not accepted his responsibilities.
Because the record supports by clear and convincing evidence the trial court’s finding that C.V. abandoned Baby Boy G., the issue before us is not whether C.V. consented to the adoption under § 26-10A-11, but rather whether, under § 26-10A-10, C.V.’s consent or relinquishment was required. I believe it was not. I believe the trial court’s order granting permanent custody to J.M.J. and T.F.J. and granting the adoption by the trial court should be affirmed. However, a majority of this Court does not agree with me. Having lost on this issue, however, I agree that it is appropriate to allow the trial court to determine who should have custody of Baby Boy G. In doing so, it should be *731 mindful of the following facts and principles.
On July 30, 1997, the Circuit Court of Pinellas County, Florida, entered an order declining to continue exercising jurisdiction over the father’s paternity and custody action. The Circuit Court of Tuscaloosa County has determined that C.V. is the natural father of Baby Boy G. The prospective adoptive parents have been awarded temporary legal and physical custody of the minor child.
As to a child born out of wedlock, the natural mother has a prima facie superior right of custody. Jackson v. Farmer, 247 Ala. 298, 24 So.2d 130 (1945); Garrett v. Mahaley, 199 Ala. 606, 75 So. 10 (1917). If the mother does not seek custody or is found by the court to be an unfit parent, the father of a child born out of wedlock, whose paternity has been established, has a prima facie right to custody of a child over a third party. Ex parte D.J., 645 So.2d 303 (Ala.1994).
A father’s prima facie right to custody of a child over the rights of a third party may be overcome by a finding that the father is unfit. A parent may forfeit the prima facie right to custody of his child by his or her conduct. Jackson v. Farmer, supra. The November 17, 2000, opinion recognized that C.V.’s conduct before and after Baby Boy G.’s birth is relevant to his fitness as a parent. It is well established that the prima facie right of a parent to custody is not absolute; instead, the question of prime importance is the welfare of the child. Id.
The Circuit Court of Tuscaloosa County is the proper court to determine who should have custody of Baby Boy G. That court may consider all evidence relevant in a child-custody proceeding and shall apply applicable Alabama custody law, including the provisions of Title 30 Ala.Code 1975. The court may consider the evidence of domestic violence in deciding custody or visitation questions as to Baby Boy G. §§ 30-3-130 to -136, Ala.Code 1975. The circuit court is also in the best position to decide other paternity- and custody-related matters, such as reasonable visitation, child support, and reimbursement to the State of Florida of the birth expenses of the minor child. The “best interest of the child” standard is the appropriate standard in making those determinations. This case has been before the courts of this State for an unreasonably long period; therefore, the trial court should act promptly.
HARWOOD, Justice
(statement of recusal).
I am obliged to recuse myself from participating in this case based on the provisions of Canon 3.C.(l)(a) of the Canons of Judicial Ethics. Canon 3.C.(l)(a) provides that a judge should disqualify himself from participating “in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where ... [h]e has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.”
I was a circuit judge in Tuscaloosa County from the initiation of these legal proceedings in that judicial circuit in December 1996, to the ruling of the Alabama Court of Civil Appeals in February 1999. At all stages this case was handled by my colleague and personal friend, Judge Philip Lisenby. Judge Lisenby conducted various hearings and other proceedings in the case and issued the April 28, 1998, order terminating the parental rights of the biological father, C.V., and allowing Baby Boy G. to be adopted by the couple with whom he had resided since shortly after his birth. During the pendency of the case, the issues presented became matters of intense *732 emotional interest to many citizens of the community. There were many public demonstrations of support for the adoptive parents, including “pickets” near the courthouse and candlelight vigils and other gatherings on the front steps of the courthouse. The case was often hotly debated throughout the community. Because Judge Lisenby and I regularly ate lunch together, aspects of the case sometimes entered our discussions, although we always respected ethical boundaries. Several members of my family developed an active interest in the case and frequently discussed the proceedings with me as those proceedings evolved and rulings were announced. Several people I was acquainted with knew the adoptive parents personally, and those people were emphatic advocates of the couple’s cause, often volunteering “inside” information about the parties involved. Frequent articles about the case in the local press and numerous television broadcasts and radio talk shows aired locally generated intense interest in the case. I did not attempt to insulate myself from any of these sources because at that time I saw no possibility that there would be an occasion for me, as a circuit judge, to rule on any aspect of the case. Judge Lisenby and another of our local circuit judges handled all “family court” cases for our circuit. Further, I did not decide to become a candidate for a place on this Court until sometime after the Court of Civil Appeals had issued its opinion in mid-February 1999.
As a result of my participation in numerous discussions about the case during 1997, 1998, and early 1999, I acquired information about the case and about the parties, and that information has had an impact on me. The various attitudes and understandings I developed might affect my analysis of the legal issues presented to this Court. Clearly, I have gained “personal knowledge of disputed evidentiary facts concerning the proceedings.” Canon 3.C.(l)(a). In such a situation, “an appellate judge who ha[s] prior knowledge of the appellant’s background and of the nature of the offense at issue should recuse himself.” Noah v. State, 494 So.2d 870, 873 (Ala.Crim.App.1986).
Accordingly, I recuse myself from this case.

. The Alabama Child Protection Act, § 26-18-1 et seq. Ala.Code 1975, uses the term "child” (not "minor”) throughout. The Alabama Adoption Code § 26-10A-1 et seq. uses the terms "child," "minor,” and "adoptee” but § 26-10A-10 uses only the words "child” and "adoptee.”