The father was awarded custody pursuant to a default judgment entered on August 22, 2001, but he never actually had primary physical custody of the child. As I read it, the custody presumption articulated by our Supreme Court in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), therefore does not apply in favor of the father under the particular facts of this case.[1]
Our Supreme Court, in Ex parte McLendon, stated as follows:
 "A natural parent has a prima facie right to the custody of his or her child. However, this presumption does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a non-parent. Ex Parte Mathews, 428 So.2d 58 (Ala. 1983); Ex Parte Berryhill, 410 So.2d 416 (Ala. 1982); Horton v. Gilmer, 266 Ala. 124, 94 So.2d 393 (1957); Lewis v. Douglass, 440 So.2d 1073 (Ala.Civ.App. 1983).
". . . .
"The correct standard in this case is:
 "'Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] child's welfare.'
 "Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), quoting the Supreme Court of Virginia, Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623 (1898).
"Furthermore,
 "'[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment *Page 610 those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.'
"Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App. 1976)."
Ex parte McLendon, 455 So.2d at 865-66 (emphasis added).
The child has lived with the mother continuously for the past 12 years, including the 18 months between the August 22, 2001, default judgment in favor of the father and the February 18, 2003, judgment awarding custody of the child once again to the mother. Thus, for whatever reason, the father never "acted upon [the court order] . . . tothe manifest interest and welfare of the child," and the child never put down "roots" with the father as contemplated by Ex parte McLendon.
The "McLendon" rule, both in its underlying policy and its literal language, is a "rule of repose" concerned with the "uprooting" of a child from a stable home and a relationship in which the child has put down "roots" in the wake of a voluntary forfeiture or a court order transferring custody. It is therefore inapplicable in this case.
In Ex parte K.T.G., 749 So.2d 458 (Ala. 1999), then Chief Justice Hooper stated:
 "The rationale behind the McLendon standard is to prevent children from being uprooted from a stable home unless the move will substantially benefit the child. In the present case, the child did not live with the parent who had legal physical custody, but had always lived with the petitioning parent. The rationale of McLendon_is inapplicable because the child would not be uprooted if the petitioning parent were given legal physical custody."
749 So.2d at 459 (Hooper, C.J., concurring specially) (emphasis added).See Ex parte Weiss, 718 So.2d 44, 44-45 (Ala. 1998) (Maddox, J., dissenting from denial of certiorari, joined by Hooper, C.J.) (recognizing policy underlying McLendon standard as one of minimizing disruption to the child and questioning whether the McLendon standard should apply when that purpose is not served); Pickett v. Pickett,792 So.2d 1124, 1129 (Ala.Civ.App. 2001) (Murdock, J., concurring specially); Grant v. Grant, 820 So.2d 824, 829-30 (Ala.Civ.App. 2001) (Murdock, J., dissenting).
The McLendon presumption was not adopted for the purpose of enablingparents to vindicate their rights. (If it were, the conduct of the parents might more logically and more readily affect the application of that standard.) As made clear by the manner in which our Supreme Court inEx parte McLendon articulated the presumption, and by their explanation of the rationale underlying that presumption, and as acknowledged by Chief Justice Hooper in his special writing in Ex parte K.T.G. and by Justice Maddox in his special writing in Ex parte Weiss, the concern of the McLendon presumption is the best interest of the children.
 "The McLendon presumption is for the benefit of the child, not the parent. When, for whatever reason, a stable, nurturing home in which the child has put down roots necessary for his or her healthy growth does not exist with a particular parent, there is no `inherently disruptive effect' in not awarding *Page 611 
physical custody of the child to that parent; the McLendon presumption logically cannot apply in such a case."
Grant v. Grant, 820 So.2d at 829-30 (Murdock, J., dissenting) (emphasis omitted). See Pierce v. Pierce, [Ms. 2010940, July 11, 2003] ___ So.2d ___, ___ (Ala.Civ.App. 2003) (Thompson, J., concurring in the result) ("It is the child's best interest that is sought to be protected by the application of the McLendon standard in a custody determination; that standard is not for the benefit or the convenience of the child's parents."). See generally Smith v. Smith, [Ms. 2020103, May 23, 2003]865 So.2d 1207, 1211 (Ala.Civ.App. 2003) (Murdock, J., concurring in the result); R.K. v. R.J., 843 So.2d 774 (Ala.Civ.App. 2002).
I therefore respectfully dissent.
[1] This is not to say that the August 22, 2001, judgment awarding custody to the father, from which the mother did not appeal, was without any legal effect vis-`a-vis the mother's subsequent March 2002 petition for modification of custody. The August 22, 2001, judgment became final, thereby requiring the mother to show a material change of circumstances in order to obtain any subsequent custody modification. This is a different standard, however, than that which would be imposed under Exparte McLendon. Well before Ex parte McLendon was decided, our courts held that it was "axiomatic to review of decrees of modification as to custody of children that such a decree should be entered only upon proof of a material change of circumstances of the parties since the prior decree, which change of circumstances is such as to affect the welfare and best interest of the child or children involved. . . . The burden of showing a change of circumstances which affects the best interest and welfare of the children is upon the petitioner." Ponder v. Ponder, 50 Ala. App. 27,30, 276 So.2d 613, 615 (Civ.App. 1973).