BRADLEY, Judge.
This is a child custody case.
The appellee, Mrs. Robert K. Jeff coat, was awarded permanent custody of a minor *1381 child by the Circuit Court of Montgomery County in a proceeding wherein the appellant, the natural father, had sought custody. He appeals.
These proceedings had their genesis in 1974 when the child’s natural mother was killed and the appellant was sentenced to prison. The record is unclear as to whether there was any connection between the appellant’s prison sojourn and his wife’s death.
Upon being sentenced to prison, the appellant carried the child, then about six months old, to his sister and asked if the child could be left with her while appellant was serving time in the penitentiary.
The sister subsequently asked appellee to take the child because she could not care for it. After consulting with her husband, ap-pellee agreed to take the child into her family. Shortly thereafter, appellee requested and obtained temporary custody of the child from the Montgomery County Juvenile Court.
In January 1977 appellant, after having been released from prison, sought to regain custody of the child, Cherrie, through the Juvenile Court of Montgomery County. This request was denied and appellant asked for a rehearing. Appellee then filed a request in the Montgomery County Family Court seeking permanent custody of Cherrie. The two proceedings were combined for hearing before the Family Court. After an ore tenus hearing, the court denied appellant’s request for custody, terminated appellant’s parental rights, and granted appellee’s request for permanent custody of Cherrie.
The evidence shows that appellant has been married three times and has a son fifteen years old by his first marriage; three girls, ages twelve, seven and three years old, by his second marriage; and no children as a result of his third marriage.
Appellant has had very little contact with his son for several years.
After being released from prison, appellant took his mother and two older daughters to Panama City, Florida where they are still residing.
The evidence shows that the two girls are living with and being supported by appellant although appellant’s mother has legal custody of them. Also the evidence shows that appellant’s mother does not live in the same house with appellant and his daughters.
There is evidence in the record that appellant has had very little contact with his daughter Cherrie. He stated at trial that he had seen her one time since he got out of prison; that he had sent her some Christmas cards while he was in prison; and that his other two daughters and his mother had sent Cherrie a gift last Christmas. Appel-lee testified that appellant had visited Cher-rie one time while Cherrie was in her custody and that this visit lasted about five minutes. Appellee also stated that Cherrie had received a Christmas card and five dollars from her (Cherrie’s) grandmother and two sisters last Christmas. The Christmas before that, appellee testified that Cherrie’s grandmother had sent Cherrie three or four dollars.
Appellant testified that he draws $164 a month from Social Security due to a disability resulting from a nervous condition. He has been treated at Bryce Hospital in Tuscaloosa, Alabama and Jackson’s Hospital in Montgomery, Alabama for this condition. Appellant also stated that he had a part-time job as a bartender where he earned about $400 a month when he was able to work.[1] Appellant stated that he did not report his part-time employment income to Social Security for fear of losing the benefits he received from that agency.
Appellant’s two daughters received $408 from Social Security due to the death of *1382 their mother. Cherrie also receives $208 a month for the same reason and from the same source as her sisters. Appellant’s mother also- receives $197 from Social Security.
From the record it appears that the two children who live with appellant are doing well in school and that they are happy in their present environment. They live with appellant in a two bedroom house. Appellant testified that on occasion his girl friend also lived with him in his house. Appellant is not divorced from his third wife, although he has not seen her in many months.
Appellee testified that her husband and she and their seventeen year old daughter lived in Atlanta, Georgia where the husband was employed. He has been working for the same company for about fourteen years and earns $23,000 a year. Their daughter has finished high school and will be going to college in the fall. The appellee said her family and she lived in a comfortable house in a nice neighborhood. She said she worked one day a week at a local theater from 3:15 p.m. to 8:30 p.m.
Appellee also stated her daughter kept Cherrie while appellee worked and that when the daughter goes to college, appellee will quit work in order to care for Cherrie full time.
Appellee stated that she loved Cherrie and was able and willing to care for her. In its decree the trial court found that:
. . Kenneth G. Dunlap is not the proper person to have custody of the said Cherrie Dunlap nor is he capable of properly caring for the infant. The Court is further of the opinion and finds that Mrs. Robert K. Jeffcoat is a highly suitable person to have the permanent care, custody and control of the infant, Cherrie Dunlap and that same is in the best interests and welfare of said juvenile
Appellant argues in brief that the trial court erred in finding that he was not a fit parent to have custody of his three and a half year old child. Appellee replies by saying that the evidence amply supports the trial court’s finding that (1) appellant was not the proper person to have custody of Cherrie; and that (2) appellee was the proper person to have custody of the child.
In the recent case of Willette v. Bannister, 351 So.2d 605 (Ala.Civ.App.1977), we said:
“Although a natural parent has a pri-ma facie right to custody of his or her child, this prima facie right may be forfeited. Horton v. Gilmer, 266 Ala. 124, 94 So.2d 393. And the mere fact that the natural parent is fit, though certainly a factor for consideration, does not automatically entitle the natural parent to custody of the child, Strickland v. Osborn, Ala.Civ.App., 333 So.2d 582, since the best interests and welfare of the child are of paramount importance. White v. Appleton, 53 Ala.App. 702, 304 So.2d 206; Esco v. Esco, 51 Ala.App. 656, 288 So.2d 444. Indeed, this court concluded in Strickland v. Osborn, supra, that a prior decree (such as the decree of October 8,1974 awarding temporary custody of the children to ap-pellee) rebuts any presumption which favors the natural parent, and places on the natural parent the burden of proving that a change in custody is necessary to promote the child’s best interests. We believe it is clear from the evidence given in the instant case that appellant failed to meet this burden.
“Moreover, in determining the question of whether a parent who has voluntarily relinquished custody of a minor child should be entitled to regain custody, each case must be determined from the particular facts involved. Horton v. Gilmer, supra. . . . ”
In the case at bar the following evidence was relevant to the trial court’s consideration of whether the natural father should be entitled to regain custody of his child: (1) appellant voluntarily relinquished custody of Cherrie (who was then barely six months old) when he was about to go to prison; (2) he draws Social Security benefits due to a nervous condition and he has *1383 been treated for this condition at Bryce Hospital and Jackson’s Hospital; (3) he works only part time and he does not report income from this employment to the proper authorities for fear of losing his Social Security benefits;. (4) he said that he was indigent and needed court-appointed counsel to represent him, yet somewhat contradictory to this claim was his testimony that he had an income of about $800 per month; (5) he has only visited Cherrie one time for approximately five minutes since he gave her up; (6) he has made very little effort to express his interest in Cherrie; and (7) he is not divorced from his third wife, yet has his girl friend live in his house with him for days at a time.
On the other hand, the evidence in support of the court’s view that appellee is the proper party to have custody of Cherrie is as follows: (1) appellee has had physical custody of the child for approximately three years; (2) she loves and cares for Cherrie; (3) she has the physical and monetary means to adequately care for the child; (4) she voluntarily took Cherrie into her house and heart; and (5) Cherrie has known no other mother and father than the Jeff coats.
In Willette v. Bannister, supra, we held that in situations where a parent has transferred the custody of a minor child either voluntarily or as a result of a prior judicial decree and the party to whom the child is transferred has acted in the manifest interests and welfare of the child, the parent will not be permitted to reclaim custody of the child unless that parent can show that a change in custody will materially promote the child’s welfare and best interests. And in reaching its determination on these matters, the trial court may properly balance the evidence in support of each party. From the record before us it is apparent that the trial court considered the evidence presented on behalf of each party and found that a change in custody would not be in the young child’s best interests.
Absent a determination that the trial court abused its discretion in its award of child custody, we have no alternative but to affirm its judgment. Smith v. State Department of Pensions and Security, Ala.Civ. App., 340 So.2d 34 (1976). After carefully reviewing the evidence in the case at bar, we cannot say that the trial court abused its discretion by awarding permanent custody of Cherrie to appellee. The judgment of the trial court is therefore affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.

. At the beginning of these proceedings appellant stated that he was indigent and, as a result, a lawyer was appointed to represent him.