This is a child custody case.
 The child, Timothy Dustin Colburn, was born on April 15, 1984. His natural mother is Deborah Colburn. His natural father is now deceased. The plaintiffs, Robert and Patricia Roden, have had actual custody of the child for a considerable amount of time since the child was very young.
 The action from which this appeal lies was instituted when the Rodens sought permanent legal custody of the child. The Rodens' complaint alleged that they had maintained custody of the child since he was approximately eleven days old; that the child's mother was unfit as a parent; and that she had abandoned him. The mother, by her answer, denied all these allegations. Additionally, the mother counterclaimed and requested that she be granted custody of the child.
 The Morgan County Circuit Court, following an ore tenus proceeding, found that both parties were fit parents, but that the child's mother had a prima facie right to his custody. The court's judgment recognized that this prima facie right can be overcome by a showing that the parent has relinquished custody and that the best interests of the child would be served by terminating parental custody and relinquishing it to another.
 However, the court found that the mother never gave up her child, but rather allowed the Rodens to keep him during necessitous times. Consequently, custody of the child was granted to the mother. *Page 292 
The Rodens appeal.
 When child custody matters are decided following a presentation of evidence ore tenus, the court's determination concerning custody will not be reversed absent a showing of abuse of discretion or plain error. Hutchinson v. Davis, 435 So.2d 1303 (Ala.Civ.App. 1983).
 Further, a presumption of correctness attaches to the court's findings concerning custody, and, on appeal, we may not substitute our judgment for that of the trial court with regard to custody. Smith v. Smith, 448 So.2d 381
(Ala.Civ.App. 1984).
 The Rodens contend that the mother relinquished custody of her child and that, as a result, the trial court inappropriately applied the presumption affording a parent a prima facie right to her child in a custody contest between the parent and a nonparent.
 Alabama law provides that, in a custody dispute between a parent and a nonparent, the child's parent has a prima facie right to custody. Ex parte Terry, 494 So.2d 628 (Ala. 1986). The rationale behind this presumption is that, as a matter of law, a child's best interests and welfare will be served by maintaining custody in the parent. Terry.
 However, if the natural parent is deemed unfit or unsuited for custody, this presumption is defeated. Self v. Fugard, 518 So.2d 727 (Ala.Civ.App. 1987). Similarly, a parent's prima facie right to custody is defeated if the parent either voluntarily forfeited custody of the child to the nonparent or a previous decree placed custody in the nonparent. Self.
 We have carefully reviewed the record and fail to find unfitness on the part of the mother or a voluntary forfeiture of custody to the Rodens. Consequently, we affirm the court's grant of custody to the mother.
 Testimony was presented to indicate that the mother is a fit parent. Her two other children appear to be taken care of adequately. Her school-aged son is basically a "B" student, and she attends school functions. We recognize that the mother has previously had instability in her life, but from the record it appears she has altered her situation. In other words, we fail to find palpable error with regard to the court's finding that the mother is a fit parent.
 The Rodens contend, however, that the mother relinquished custody of her child to them. In fact, they maintain that she abandoned him. Pursuant to section 26-18-3, Code 1975, abandonment is defined as:
 "A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent." (emphasis added)
 The testimony is in great dispute as to the child's age when the Rodens first kept him in their home. They maintain he was only eleven days old. The mother and other witnesses testified he was approximately two and one-half months old.
 The Rodens contend that they have kept the child virtually his entire life with very little interest shown by the mother in his well-being. Once again, the testimony is in great dispute. The mother testified that it was under dire circumstances that she let the Rodens keep the child.
 We have reviewed the record and note these facts. The mother and the child's father were living with the mother's brother and his wife when the Rodens first started keeping the child. The situation was necessitated by both parents' lack of a job. Additionally, the brother's wife was a friend of the Rodens, and the mother testified that she felt pressured by her brother's wife to allow the Rodens to keep the baby.
 Mrs. Roden testified that she and her husband never explicitly told the mother they wanted to adopt the child. Further, the mother said she never intended for the Rodens to keep the child permanently.
We recognize that the mother did not maintain very much contact with her son *Page 293 
during the time he was with the Rodens. However, the mother testified that her lack of contact was due to an inability to find the Rodens. Testimony did reveal that the Rodens had moved several times recently and also that they did not always have a phone. The mother also testified that she got excuses from Mrs. Roden's mother every time she called looking for the child.
 In short, we cannot say that there is no evidentiary support for the trial court's conclusion that the mother had neither abandoned her child nor voluntarily forfeited his custody to the Rodens. As we may not substitute our judgment concerning the evidence for that of the trial court, we affirm. Smith, supra.
 Finally, the Rodens contend that the trial court erred when it failed to amend its written order so that it conformed to its oral order. Specifically, the judge stated, at trial, that the Rodens would be compensated for their support of the child in the amount of $1,000.
 The court's written order, however, failed to make such a provision. In the case of Hobbs v. Hobbs, 423 So.2d 878
(Ala.Civ.App. 1982), we stated:
 "Regarding any statement made by the trial court at the end of the trial being contrary to the actual judgment, a judgment may be rendered by the circuit court only as is provided by A.R.Civ.P. 58(a). Each of the rendition methods therein stated discloses that the judgment be in writing."
 As in Hobbs, supra, we recognize that the written final judgment takes precedence over the statements made by the trial court following the proceeding. Consequently, we find no error on the part of the court in its refusal to amend its written order.
The judgment of the trial court is affirmed.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.