CRAWLEY, Judge.
D.P.M. (the mother), M.L.T. (the father) and D.B. (the maternal grandmother) all sought custody of D.N.T. (the child). Following ore tenus proceedings, the trial court awarded temporary custody of the child to the grandmother, and the mother appealed. Because the trial court used the wrong standard to decide the custody issue, we must reverse and remand for further proceedings.
The child was born in April 1992, while the mother was incarcerated in Texas following convictions for check kiting. The mother could not keep the child in prison, so she arranged to have a friend care for the child. When the child was three months old, the friend took the child to the maternal grandmother in Alabama, at the mother’s request. At the same time, the mother signed a document entitled “Temporary Custody Order,” which stated the following:
“Know all men by these presents: That [the mother] ... has made, constituted and appointed and by these presents does hereby make, constitute and appoint [the grandmother] ... as true and lawful guardian for [the child], born April 8, 1992, her natural child.
“Said child will reside at [the grandmother’s Alabama residence].
*193 “Giving and granting unto said Guardian full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done for her child, as fully to all intents and purposes as she might or could do if personally present.”
The mother completed her prison term in Texas and was transferred to the Arizona penal system, from which she was released on parole in May 1993.
In December 1993, the Alabama Department of Human Resources (DHR), which had been making public assistance payments to the grandmother for the benefit of the child, filed a complaint against M.L.T., seeking an adjudication of the child’s paternity and seeking child support from M.L.T. Following a blood test, M.L.T. admitted that he was the father of the child. He then counterclaimed for custody.
In April 1994, when the child was two years old, the grandmother took the child to Arizona. The evidence concerning the nature of that trip was in conflict. The grandmother testified that she took the child for a visit with the mother. The mother maintained that the purpose of the trip was to bring the child there for the child to live with her permanently. The grandmother returned to Alabama one month later, without the child.
In July 1994, the grandmother filed an affidavit with the juvenile court, alleging that the mother had tricked her into bringing the child to Arizona, had refused to allow the child to return to Alabama, and was not providing proper care or a suitable environment for the child. The grandmother alleged that she feared for the child’s safety. On July 27,1994, the juvenile court issued an ex parte order granting temporary custody to the grandmother.
On December 21, 1994, the juvenile court conducted a full hearing, with all parties present and represented by counsel. At the time of the hearing, the father, who had had a previous conviction for a controlled substance offense, was completing a drug rehabilitation program. He had married, found employment, and was living in the same city as the grandmother. The mother was living and working in Phoenix, Arizona, cohabiting with a man by whom, in July 1994, she had had another child. The father and the grandmother had reached an agreement providing for the father’s visitation with the child.
Following the hearing, the trial court entered an order that provided, in pertinent part, the following:
“This is an original or initial custody proceeding, at least as far as [the mother’s] rights are concerned. The order of July 27, 1994, was ex parte, at least as far as [the mother’s] rights are concerned. Therefore, as concerns [the mother], the correct legal standard is the ‘best interest standard.’ Concerning [the mother’s] petition for custody, she simply has failed to meet her burden of proof that at the present time it is in the ‘best interest’ of [the child] for [the mother] to have her custody. Henceforth, the applicable standard will be Ex parte McLendon and the parents will have to show that a change of the custody will materially promote the child’s welfare.”
In a custody dispute between a parent and a nonparent, the parent has a prima facie right to custody of his or her child. Ex parte D.J., 645 So.2d 303 (Ala.1994). Unless the trial court finds that the parent is unfit, or that the parent has voluntarily relinquished custody of the child, or that the parent has lost custody of the child by virtue of a prior order, the law presumes that the best interests of the child will be served by giving the parent custody. Ex parte Terry, 494 So.2d 628 (Ala.1986); Ex parte Mathews, 428 So.2d 58 (Ala.1983); E.C.B. v. J.S., 612 So.2d 1243 (Ala.Civ.App.1992); Roden v. Colburn, 522 So.2d 290 (Ala.Civ.App.1988). Following a voluntary relinquishment or loss of custody, the parent may regain custody only by establishing that a change will “materially promote” the child’s welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984); J.F. v. A.G., 607 So.2d 234 (Ala.Civ.App.1991).
In this case, the trial court did not find that the mother was unfit. Therefore, unless the mother had voluntarily relinquished custody or had lost custody of the *194 child by virtue of a prior order, the mother did not have the burden of proving that the best interests of the child would be served by granting her custody. Instead, she would have had a presumptive right to custody which could be overcome only by clear and convincing evidence that she was unfit, see Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939), or by proof that she had relinquished or lost custody, see Ex parte D.J., 645 So.2d 303.
The record does not support a finding that the mother had lost custody of the child by virtue of a prior order. The trial court correctly noted that the pendente lite order of July 27, 1994, was ex parte and did not adversely affect the mother’s rights at the final hearing. It is well settled that a pen-dente lite order changing custody does not shift the burden of meeting the McLendon standard to the parent who temporarily loses custody by virtue of that order. See T.L.L. v. T.F.L., Jr., 580 So.2d 1359 (Ala.Civ.App. 1991); Sims v. Sims, 515 So.2d 1 (Ala.Civ.App.1987).
Whether the mother had previously voluntarily relinquished custody of the child is an issue the trial court may be required to address on remand. It could be argued that the mother voluntarily relinquished custody of the child when she signed a document entitled “Temporary Custody Order,” purporting to give the grandmother custody of the child while the mother was in prison. This court has previously indicated that a parent who makes arrangements for another to assume custody of his child while he, the parent, is incarcerated has “voluntarily relinquished custody” of that child. See J.S. v. D.S., 586 So.2d 944 (Ala.Civ.App.1991); Dunlap v. Jeffcoat, 352 So.2d 1380 (Ala.Civ.App.1977).
The holdings in J.S. and Dunlap are somewhat doubtful, however, after the decision of the Alabama Supreme Court in Ex parte D.J., 645 So.2d 303. In Ex parte D.J., the court defined “voluntary relinquishment”:
“ ‘Relinquishment’ is defined as ‘[a] forsaking, abandoning, renouncing or giving over a right.’ Black’s Law Dictionary 1161 (5th ed. 1979). Voluntary relinquishment is thus essentially synonymous with the concept of “waiver,’ which has been defined as the ‘voluntary and intentional surrender or relinquishment of a known right.’ Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala.1984). By definition, therefore, a party ‘cannot waive a right of which he is unaware,’ Webb v. State, 539 So.2d 343, 353 (Ala.Crim.App.1987), and a fortiori, cannot waive or relinquish a right that does not exist.”
Ex parte D.J., 645 So.2d at 306-07 (emphasis in original). Applying the logic of Ex parte D.J. to the facts of this case, we conclude that the mother had no right to retain custody of her child in prison, and, therefore, she could not have “voluntarily relinquished” custody when she asked the grandmother to keep the child while she, the mother, was incarcerated. Both “[t]his court and our Supreme Court have encouraged custodial arrangements during necessitous times.” M.D.K. v. V.M., 647 So.2d 764, 765 (Ala.Civ.App.1994). We have recognized that a parent who “enlist[s] the aid of [grandparents] to care for the child during difficult times” should not be deemed to have “voluntarily relinquished” custody, because
“[t]o allow a grandparent to argue that this set of facts supports a finding that a parent voluntarily relinquished custody of a child would promote family discord and would discourage parents from seeking assistance from grandparents to insure that the children have adequate care.”
M.D.K. v. V.M., 647 So.2d at 765. We disavow any language in J.S. or Dunlap that would mandate a finding that a parent facing imprisonment has “voluntarily relinquished” custody of his child when he arranges for another party to care for the child during the parent’s imprisonment.
The trial court erred by imposing on the mother the burden of proving that the child’s best interests would be served by giving the mother custody. The mother had no such burden; instead, she had the benefit of a presumption to that effect.
The judgment of the trial court is reversed, and the cause is remanded for a redetermination of custody. On remand, the trial court should apply the principles stated *195 in Ex parte D.J., 645 So.2d 303 (Ala.1994); Ex parte Terry, 494 So.2d 628 (Ala.1986); and Roden v. Colburn, 522 So.2d 290 (Ala.Civ.App.1988).
If the court finds clear and convincing evidence to support a finding that the mother is unfit, then it may award custody to the grandmother. If, however, the court determines that there is no clear and convincing evidence to support a finding that the mother is unfit, then in order to award custody to the grandmother, the court must conclude that the mother has voluntarily relinquished custody of the child. We have already determined that the document entitled “Temporary Custody Order” does not, by itself, demonstrate a voluntary relinquishment by the mother. Therefore, in deciding the issue of relinquishment, the court should take into account all of the mother’s conduct toward the child, especially her conduct from May 1993, when she was released on parole, to the time of the hearing.
REVERSED AND REMANDED.
ROBERTSON, P.J., and THIGPEN and YATES, JJ., concur.
MONROE, J., concurs specially.