PITTMAN, Judge.
R.O.M. (“the father”) previously appealed a summary judgment of the Walker juvenile court in R.O.M.’s paternity action, declining to declare that he was the father of W.K.D.J. (“the child”). See R.O.M. v. T.W.J., 768 So.2d 397 (Ala.Civ.App.2000) (“R.O.M. I”). The facts in R.O.M. I indicate that the child was born in May 1995. The father testified he first learned of the existence of the child sometime in 1997, when the child was two years old. Following this discovery, the father arranged to *100 have a DNA test performed in the fall of 1997. The results of that test were inconclusive, and the father subsequently took a second test, which indicated that he was the child’s father.
In January 1998 the father petitioned for custody, or in the alternative, for visitation rights as to the child and sought a judgment declaring that he was the father of the child. The juvenile court entered a summary judgment against the father and in favor of the mother’s ex-husband and B.B. (“the grandmother”), the maternal grandmother and temporary custodian of the child.[1] This court reversed the summary judgment and remanded the case. On remand, on June 20, 2000, the juvenile court entered an order declaring R.O.M. to be the father of the child, thus enabling him to pursue his parental rights. The juvenile court set a hearing for August 29, 2000, on the issues of child support, custody, and visitation.
On August 18, 2000, the father filed a motion for immediate visitation pending the custody hearing, arguing that he was being denied visitation by the grandmother. On September 15, 2000, the juvenile court granted the motion and awarded the father visitation every other weekend from 5:00 p.m. on Friday until 5:00 p.m. on Sunday. The August 29, 2000, hearing was continued, and the juvenile court began hearing testimony on October 16, 2000. During the course of the hearing the juvenile court learned that the mother had not been served with notice of the hearing, nor was she represented by counsel. The juvenile court recessed the hearing until the mother could be served and requested that the attorneys agree on a final hearing date.
In May 2001 the father filed a motion to set the cause for a final hearing; the juvenile court set a hearing for August 16, 2001. In July 2001 the father began paying child support in the amount of $50 per week pursuant to a court order. After several delays during which time the mother could not be located, the juvenile court held a “final” hearing on November 20, 2001. Both the grandmother and the father requested custody of the child. The juvenile court received ore tenus evidence and conducted an in camera examination of the child.
Before the juvenile court entered the summary judgment for the grandmother, the father was allowed visitation with the child (during 1998 and 1999), but he lost his visitation rights during the appeal of R.O.M. I and only regained visitation rights again in September 2000. Both the father and his wife testified that the child enjoyed his visits and that the father and the child were developing a strong relationship. The father and his wife also testified that the grandmother told them she would leave the country with the child if she lost custody and showed them passports she had for herself and the child. The grandmother alleged that the father had abused the child; the father denied ever hitting the child.
The grandmother’s testimony at the November 20, 2001, hearing verified that she had taken physical custody of the child when her daughter, the mother, voluntarily relinquished custody in 1997. The grandmother gave extensive testimony regarding bruises she discovered from time to time on the child and offered some photographs as evidence. She stated that she had not reported those incidents of alleged abuse to the authorities except in passing. During cross-examination, the grandmother revealed that the photo *101 graphs showing bruises were taken during July and August 2000, months when the father’s visitation rights were suspended. At the close of the hearing the court did not issue an order.
On February 26, 2002, the juvenile court held another hearing at which it heard no testimony, only argument from the parties’ counsel. No record of that hearing exists, other than a mention of that proceeding in the juvenile court’s final order. On February 28, 2002, the juvenile court issued an order addressing custody, visitation, and child support. This order awarded custody of the child to the maternal grandmother and set a visitation schedule for the father. The order also reaffirmed the earlier child-support order. The father filed a postjudgment motion, which the juvenile court denied on March 8, 2002. This timely appeal follows.
The father argues that the juvenile court abused its discretion by awarding custody of the child to the grandmother rather than to him. He attacks the juvenile court’s order in two specific ways. First, the father argues that the juvenile court erred in awarding custody to a non-parent without making a finding that he, as the natural parent, is unfit. Second, the father argues that the juvenile court must have applied the wrong standard when it awarded custody of the child to a nonpar-ent over the natural father.
“ ‘[0]ur standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of a trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown.’ ”
Ex parte Perkins, 646 So.2d 46, 47 (Ala.l994)(quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)) (citations omitted).
“In a custody dispute between a parent and a nonparent, the parent has a prima facie right to custody of his or her child. Ex parte D.J., 645 So.2d 303 (Ala.1994). Unless the trial court finds that the parent is unfit, or that the parent has voluntarily relinquished custody of the child, or that the parent has lost custody of the child by virtue of a prior order, the law presumes that the best interests of the child will be served by giving the parent custody. Ex parte Terry, 494 So.2d 628 (Ala.1986); Ex parte Mathews, 428 So.2d 58 (Ala.1983); E.C.B, v. J.S., 612 So.2d 1243 (Ala.Civ.App.1992); Roden v. Colburn, 522 So.2d 290 (Ala.Civ.App.1988).”
D.P.M. v. D.B., 669 So.2d 191, 193 (Ala.Civ.App.1995).
In this case, the juvenile court did not expressly find the father unfit. See C.P. v. W.M., 806 So.2d 395 (Ala.Civ.App.2001). In fact, the juvenile court made no written findings of fact at all. Absent a finding of unfitness, unless the father voluntarily relinquished custody or lost custody of the child by virtue of a prior order the presumption that it is in the best interests of the child for the father to have custody is not overcome. Under the standard expressed in Ex parte Terry, 494 So.2d 628 (Ala.1986), the natural parent has a prima facie right to custody as to a nonparent, in this case the grandmother. Because no prior custody order is in the record, the only remaining ground by which the juvenile court could award custody to the grandmother over the father is voluntary relinquishment.
This court recently reviewed the issue of voluntary relinquishment in R.K v. R.J., 843 So.2d 774 (Ala.Civ.App.2002). *102 Citing Ex parte McLendon, 455 So.2d 863 (Ala.1984), this court noted that a parent who voluntarily relinquished custody and “whose relinquishment has been acted upon by another to the manifest interest and welfare of the child,” loses his presumption of right to custody and must meet the McLendon standard to regain custody of his or her child. R.K. v. R.J., 843 So.2d at 778. That standard imposes a duty on the party seeking custody to prove that the transfer of custody will materially promote the interest and welfare of the child and will outweigh the inherently disruptive effect of the transfer. Ex parte McLendon, 455 So.2d at 865. Of the evidence offered in the hearings that might support a finding of voluntary relinquishment, the only undisputed fact gleaned is that the father did not begin paying child support until he was ordered to do so in July 2001. The father in this case initially began the process to adjudicate paternity and to assert visitation in 1998. See R.O.M. I. The primary difficulty is that the process of adjudicating the father’s legal rights has taken nearly five years and during that time the child has lived with the grandmother.
Indeed, the record is clear that once the DNA test results were verified by the second test performed in 1998, the natural father consistently pursued an active relationship with the child. The fact that the father’s attempt to pursue his parental rights was delayed by the judicial process does not support a finding of voluntary abandonment. We cannot find sufficient evidence in the record to support a voluntary relinquishment of custody by the father.
Usually in cases where the juvenile court has made no findings of fact, this court assumes that the juvenile court made those findings necessary to support its judgment. See Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997). However, a thorough review of the record reveals numerous conflicting statements by the father and the grandmother; those conflicting statements cast doubt on the juvenile court’s custody determination.
The father denied any knowledge of the child’s existence until sometime after the child turned two years old. The grandmother stated that the daughter told her that R.O.M. was the child’s father, although at the time of the child’s birth the daughter was married to another man. The grandmother accused the father of bruising the child during scheduled visitation, but she admitted she never alerted the authorities to the alleged abuse. The father stated that the grandmother had threatened to run away with the child if she lost custody. We note that this court may not substitute its judgment for that of the trial court. Bratton v. Romine, 819 So.2d 58, 61-62 (Ala.Civ.App.2001). However, after a careful review of the record, this court cannot determine which standard the juvenile court applied when it awarded custody to the grandmother.
In light of the conflicting evidence contained in the record, as well as the fact that the juvenile court did not make any written findings of fact regarding the fitness of the father, we conclude the trial court abused its discretion by awarding custody of the child to the grandmother. We cannot determine whether the trial court applied Ex parte Terry, supra, or Ex parte McLendon, supra, in making the custody award determination. Therefore, we must reverse the juvenile court’s judgment and remand the cause for the juvenile court to make the necessary express findings of fact, to apply the proper standard, Ex parte Terry, and to make a child-custody award based upon the correct standard.
*103 REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON, J., concur.
CRAWLEY and MURDOCK, JJ„ concur in the result.

. The mother's ex-husband, to whom she was married when the child was born, was the presumed father. He is not a party to this appeal.